In the Matter of MELANIE MARKENS, Respondent, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Appellant, and REYMONT PROPERTIES, INC., Intervener, Respondent. (Proceeding No. 1.)

In the Matter of MAX KATZENSTEIN et al., Appellants-Respondents, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Respondent-Appellant, and PARK CRESCENT HOTEL, INC., Respondent. (Proceeding No. 2.)

In the Matter of JOHN S. BILLINGSLEA et al., Respondents, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Appellant, and HOTEL WELLINGTON, INC., Intervener, Appellant. (Proceeding No. 3.)

In the Matter of SARAH E. ROBINSON, Respondent, against JOSEPH D. McGOLDRICK, as State Rent Administrator, Appellant, and ALAMAC ESTATES, INC., Intervener, Appellant. (Proceeding No. 4.)

First Department, December 16, 1952.

*Robert H. Schaffer* of counsel (*Emory Gardiner* with him on the brief), for appellant in Proceeding No. 1.

*Irving J. Roth* of counsel (*Frank Roth, Chester E. Frankel* and *Willard Schwartz* with him on the brief), for respondent in Proceeding No. 1.

*Jerome E. Malino* of counsel (*Joseph Jay* and *Alfred J. Gilbert* with him on the brief; *Gilbert & Gilbert,* attorneys), for intervener-respondent in Proceeding No. 1.

*Charles W. Merritt* of counsel (*Lord, Day & Lord,* attorneys), for Hotel Association of New York City, Inc., *amicus curiæ* in Proceeding No. 1.

*Robert H. Schaffer* of counsel (*Emory Gardiner* with him on the brief), for respondent-appellant in Proceeding No. 2.

*Barney Rosenstein* of counsel (*Murray A. Gordon* with him on the brief), for appellants-respondents in Proceeding No. 2.

*Nathan B. Bernstein* for respondent in Proceeding No. 2.

*Robert H. Schaffer* of counsel (*Emory Gardiner* with him on the brief), for appellant in Proceeding No. 3.

*Charles W. Merritt* of counsel (*Lord, Day & Lord,* attorneys), for intervener-appellant in Proceeding No. 3.

*David P. Siegel* for respondents in Proceeding No. 3.

*Robert H. Schaffer* of counsel (*Emory Gardiner* with him on the brief), for appellant in Proceeding No. 4.

*Sidney Roffman* for intervener-appellant in Proceeding No. 4.

*Charles E. Frankel* of counsel (*Willard Schwartz, Irving J. Roth* and *Frank Roth* with him on the brief; *Chester E. Frankel* and *Willard Schwartz,* attorneys), for respondent in Proceeding No. 4.

VAN VOORHIS, J. The principal question presented upon these appeals is whether the State Rent Administrator followed the requirements of the State Residential Rent Law in granting applications for increases in rents made in behalf of four hotels in this city. The problem arises because there are two classes of space or accommodations in hotels, controlled and decontrolled. Only those accommodations that were controlled under the earlier Federal rent regulations, and which continue to be occupied by the then tenants, are placed under State rent control. As tenants remove from the controlled space, it becomes decontrolled.

The applications made in these cases for rent increases in controlled accommodations were made under paragraph (a) of subdivision 4 of section 4 of the State Residential Rent Law, the pertinent portions of which read as follows: " Provision shall be made pursuant to regulations prescribed by the commission, for individual adjustment of maximum rents where * * * (3) the landlord operates a hotel or rooming house or owns a cooperative apartment and has not been fully compensated by increases in rental income sufficient to offset unavoidable increases in property taxes and other costs, including costs of operation of such hotel and rooming house * * * which have occurred since the federal date determining the maximum rent or the date the present landlord commenced operation of the property, whichever is later ".

Paragraph (b) of subdivision 4 of section 4 limits any increase in rent to 15% in any one year, and paragraph (c) provides for the equitable apportionment of any increase in rent among all controlled housing accommodations as follows: " Any increase in maximum rent shall be apportioned equitably among all the controlled housing accommodations in the property. In making such apportionment and in fixing the increases in maximum rents the commission shall give due consideration * * * (2) to all other income derived from the property, including income from space and accommodations not controlled, or the

rental value thereof if vacant or occupied rent-free, so that there is allocated to the controlled housing accommodations therein only that portion of the amount of increase necessary pursuant to (1), (2) or (3) of paragraph (a) of subdivision four hereof, as is properly attributable to such controlled accommodations."

The common question on these appeals is whether the Rent Administrator has acted conformably to the apportionment direction of the statute in apportioning increased costs of operation in hotels between the controlled and decontrolled rooms according to the space each occupies, crediting the increase in rentals which have been received from each class of rooms to that class, and assessing the resulting deficiency attributable to the controlled space to those rooms, or whether the Administrator was required to lump all increased costs and rentals, regardless of the space occupied by controlled and decontrolled rooms, and apportion only any overall deficiency.

The dispute in these cases results from the fact that increased rentals have been secured from decontrolled space in a greater proportionate amount than the increased rentals secured from the controlled space. The tenants of controlled rooms claim that they are entitled to the benefit of the proportionately greater rentals paid by the transients. The Administrator has ruled that the controlled tenants are not entitled to this subsidy and must bear, subject to the limitation of a 15% increase in rent under paragraph (b) of the law, the share of the increased cost of operations attributable to the controlled rooms on a space basis.

It would seem, although the situation is not presented or envisioned in these cases, that if the tenants' contention is well grounded, it would likewise follow that tenants of controlled space could be required to make up a disproportionate share of any increased costs of hotel operations where increases in rentals from decontrolled space fell short of reaching its prorata share.

The pertinent provisions of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission adopted and followed by the Rent Administrator in granting the rent increases made in these cases are paragraphs b and c of subdivision 7 of section 33, which read as follows:

" b. If, as determined by the Administrator, the landlord has not been fully compensated by increases in the rental income for the controlled housing accommodations sufficient to offset such increases in operating costs as are charged to such controlled

housing accommodations, the Administrator shall grant an adjustment in the maximum rents in the manner and subject to the provisions of subdivision c. of this paragraph.

" c. That portion of the increased operating costs applicable to the controlled housing accommodations shall be apportioned equitably among all the controlled housing accommodations in the property. In making such apportionment and in fixing the increases in maximum rent, the Administrator shall give due consideration to all previous adjustments or increases in maximum rents by lease or otherwise, provided, however, that no adjustment for any individual housing accommodation shall exceed 15 percent of the maximum rent prescribed on the date the order is issued under this paragraph."

The orders of Special Term hold that these regulations are not in accordance with the directions of the statute referred to above, and that the regulations and action of the Administrator pursuant thereto are invalid, because " due consideration " was allegedly not given to the income derived from accommodations not controlled.

What was the intention of the Law? The relevant sections of the State Residential Rent Law were adopted or amended by the 1951 Legislature (L. 1951, ch. 443) upon the recommendation of the Rent Administrator, whose affidavit in the *Katzenstein* case contains the following statement with respect to hotel rent control:

" On January 15, 1951, in accordance with the requirements of the statute .as enacted in 1950, I submitted a Rent Control Plan to the Legislature of this state. In that plan, at page 28, in outlining this type of relief, I stated that it related to ' * * * controlled rooms in hotels in New York City and Buffalo * * * '.

" With this plan, I also submitted to the Legislature, again as required by statute, a set of proposed regulations, which were subsequently adopted with no substantial change. In sec. 33(7)(b) of these proposed Regulations, I stated:

" ' If, as determined by the Administrator, the landlord has not been fully compensated by increases in rental income sufficient to offset such increases in operating costs. * * * '

" The context of that entire portion of the Regulations shows a clear and direct reference back to ' controlled rooms in New York City and Buffalo ' hotels, which were the subject of concern at this phase of my study.

"I also submitted to the Legislature, the draft of the present Act (adopted substantially as submitted). In the relevant part, this Act provided, at Sec. 4, Subd. 4(a)(3):

"'* * * the landlord operates a hotel and has not been fully compensated by increases in rental income sufficient. * * *',

"At each of these three quoted portions of my report to the Legislature, *I intended and made reference to rental income from controlled rooms only*. As evidenced by statistical data, previously developed in a Survey of Rents, which I issued on November 1, 1950, I was aware that in a significant number of instances, controlled tenants in these hotels were not paying rents (the maximum permitted under the law) sufficient to meet their allocable portion of the current operating cost of the hotel. My intention in proposing this legislation, adopted without change in this respect, was to resolve this unequitable distribution of the rent load.

"On page 18 of the Rent Control Plan, I stated that among the objectives of rent control were the following:

'(9) Since rent control must be continued, it is important to make it fair and equitable to all concerned.

'(10) The Commission believes it never was the intention of rent control to compel landlords as a group, or any portion of them, to subsidize tenants.'

"Moreover, I considered that rent control as applied to hotels was unique and distinguishable, in many ways, from the other areas of control. The tenant, rather than the living space, is the object of control in a hotel. These stated objectives were being defeated to the extent that *controlled tenants in hotels were not carrying their fair share of the operating costs and, in effect, were being subsidized by decontrolled tenants*.

"Such was the plain intent of the proposed legislation and regulations and it was the intent when these proposals were enacted by the Legislature. I view the Regulations to be in full accord with the statute." (Italics supplied.)

While the operation of the Rent Administrator's mind concerning the intent and meaning of a statute does not bear upon its construction, nevertheless, the purpose of these amendments, expressed in recommendations to the Legislature made by the Rent Administrator pursuant to a legislative mandate, are not entirely irrelevant.

The construction embodied in subdivision 7 of section 33 of the regulations carries out what is the more natural construc-

tion of clause (3) of paragraph (a) of subdivision 4 of section 4 and paragraph (c) of subdivision 4 of section 4 of the statute. Clause (3) of paragraph (a) of subdivision 4 of section 4 is the substantive enactment, authorizing increases in rental income of hotels to offset unavoidable increases in costs. It must have referred to controlled areas in such buildings, inasmuch as the Legislature was acting in regard to areas subject to rent control. Paragraph (c) of subdivision 4 of section 4 governs the procedure to be followed in the apportionment of these increases " equitably among all the controlled housing accommodations ". The " due consideration " which the statute requires to be given to all other income derived from the property, including income from space and accommodations not controlled, is specifically for the purpose of allocating to the controlled housing accommodations only that portion of any necessary increase in rents as are " properly attributable to such controlled accommodations." By allocating increases in costs of operation against increases in rents respectively in controlled and decontrolled areas, according to the relative size of such areas, the Rent Administrator gave the " due consideration " to the income from decontrolled areas which the statute requires.

The basic concept and direction are that a proper division shall be made between the controlled and decontrolled space and the income from each, so that each will bear its proportionate share of any increase in operating costs and necessary compensating increase in rent. The purpose of the statutory detail was to make sure that the controlled area was not saddled with more than its proportionate share of the hotel operating expense. It was not the intention of the statute to confer some undue benefit upon the controlled tenants, and credit them with what might turn out to be the relatively more favorable operation of the decontrolled space. The law was not concerned with the decontrolled space at all, except incidentally, as we have observed, to make sure that the tenants of controlled space are not required to make up any deficiency in income from decontrolled space and are to be " equitably " treated and required to make up a deficiency in operations only in an amount " properly attributable to such controlled accommodations."

In our view, the Administrator has done what was intended and required of him by the law. He has given due and appropriate consideration to the income derived from the decontrolled space.

The orders appealed from should be reversed, with costs, and the determinations of the Rent Administrator should be confirmed.

CALLAHAN, J. (dissenting). The Administrator apparently has construed the provision in paragraph (a) of the statute reading " not * * * fully compensated by increases in rental income " to refer only to income from controlled tenants. He also appears to have construed paragraph (c) to contain only general procedural provisions and determined that all of these provisions were not intended to apply to every case in which increases in rent were permissible. Such construction is indicated by the form in which the Administrator adopted paragraph b of subdivision 7 of section 33 of his regulations. That regulation reads as follows: " b. If, as determined by the Administrator, the landlord has not been fully compensated by increases in the rental income for the controlled housing accommodations sufficient to offset such increases in operating costs as are charged to such controlled housing accommodations the Administrator shall grant an adjustment in the maximum rents in the manner and subject to the provisions of subdivision c. of this paragraph.''

The regulation contains no requirement for the consideration of income from decontrolled accommodations in fixing or apportioning rent increases in hotels. Likewise, in processing the present applications it would appear that the Administrator did not deem it necessary to consider such income. It is this failure to consider that class of income that brings about the present controversy.

To demonstrate what the administrator did in construing the statute and computing the amount of increases warranted, it might be well to take the figures in one concrete case and follow the mathematical computations which he made. In the *Katzenstein* case, relating to the Hotel Park Crescent, it appears that the costs of operating all rentable space showed an increase of $157,223.38 in the year 1950, the one involved in the application, over the base year 1943. Concededly, part of that increase in cost had been compensated by voluntary increases in income during the same period of years. However, the income from the decontrolled accommodations appears to have risen at a greater rate than that from the controlled accommodations. To equalize this situation the administrator took steps to prorate the increase in income between the two classes of accommodations. He determined that 56.19% of the space in this hotel was con-

trolled space and applied that percentage to the figure of $157,223.38 and thus obtained the sum of $88,343.82 as the prorated part of the increased cost required to be supplied by the controlled space. He found that an increased income of $46,890.11 had already been received from controlled space between 1943 and 1950 and decided that the difference of $41,453.71 should be the amount of increased rent to be collected from tenants in the controlled area. As this would have meant a raise in rent in excess of 15%, he reduced the sum to be collected to $34,623.72 or a 15% increase.

It seems to me that such a computation fails to follow that requirement of the statute found in paragraph c directing that due consideration must be given to income received from space not controlled in fixing any increase in rent and in apportioning the same. This requirement is not entirely procedural for it relates to the fixation of increases as well as the apportionment thereof.

It seems useless to argue that the method followed by the Administrator distributed the burden of increases more equitably or avoids subsidies in favor of the controlled tenants. If any express and applicable provisions of the statute require a particular step to be taken in fixing and apportioning increases, the regulations adopted and the method pursued thereunder may not omit that step. The requirement for giving due consideration to the income from the property, including space not controlled, would seem to be a mandatory one. It should not have been omitted in these instances.

In my opinion the Rent Administrator was required by the letter of the statute to deduct from the $157,223.38 of increased cost in the *Park Crescent* case the total of increased income from the whole of the premises controlled and decontrolled. There appears in the record a figure of $114,427.11 said to represent the increased income from both classes of accommodations. Though this figure has not been approved by the Administrator we may, for the purpose of illustration, use it to compare the result that would be obtained if it was used and the statutory formula was followed. Deducting the total increase of compensatory income, $114,427.11, from the total increased cost of $157,223.38, we find a noncompensated increase in cost of $42,796.27. To this figure the percentage of 56.19 should be applied. The resulting figure of $24,044.22 would represent the increase to be collected from the tenants in the controlled space of the Park Crescent Hotel. By this method of calculation due

consideration is given to the income received from space not controlled and any increases are allocated as required by the statute.

Of course, the Administrator could adopt any method of calculation, which would follow the mandate of the statute, but he could not ignore such mandate either in adopting his regulation or computing the increase. If he had used some method of adjusting the burden of the increase in the light of the prior share of increases met by the two classes of tenants after giving due consideration to the income from the decontrolled space, that would have been within his powers. He did not do that but attempted to equalize or prorate without considering income from the decontrolled space.

Not only do I find that the Administrator has disregarded the letter of the statute, but it would seem that the construction followed by him disregards its spirit. The statutory provisions in paragraph (a) that this class of rent increase is to be applicable only when the increase in income is not sufficient to meet increased costs shows by its context that it relates to the whole property and thus indicates a recoupment plan, and not one to secure a fair return on investment. There is a plan in the statute assuring a 4% return on investment. But the present applications were not made under that plan. The method followed by the Administrator would make increases based upon increased costs of operation other than a recoupment plan. It might well result in requiring increased rents from one class of tenants, even though sufficient total income to meet all increases in costs was being obtained from the entire operation. That does not seem to me to be the purpose of the subdivision involved.

It seems to me that there is at least an alternative method of first deducting all increased income from increased costs and fixing the increase of rent for controlled tenants by that percentage of the deficiency represented by the controlled space as against the total space taking the income from noncontrolled space into consideration and such method would result in allocating to the controlled housing accommodations only that portion of the increase properly attributable to such accommodations.

A further point is made by the controlled tenants that the Administrator failed to give due consideration to the rental value of vacant space in the noncontrolled area. In some instances this vacant space represents vacancies in rooms reserved for rental to transient guests. It may well be that the

vacancies in this class of rooms were in accord with normal experience in respect to the rental of rooms for transients. At least, the Administrator could so find. I do not construe the provision of the statute relating to vacancies to mean that the rental value of all vacant rooms must be added under all circumstances.

In giving due consideration to vacancies the Administrator has the right to make such findings with respect to vacancies of this nature as the circumstances warrant.

For the reasons indicated, I think that the disposition made by Special Term in remitting these matters to the Administrator was correct. I would, however, make a provision in the order of remission authorizing the Administrator to make any increases, which he finds warranted, effective as of the dates when the applications are presented. I see no legal obstacle preventing the Administrator from doing this. To the extent of adding such a provision I vote to modify the orders appealed from and otherwise affirm.

PECK, P. J., and BREITEL, J., concur with VAN VOORHIS, J.; CALLAHAN, J., dissents in opinion.

Orders reversed, with costs to the appellant, and the determinations of the State Rent Administrator confirmed.